## HOOD RUBBER CO. v. UNITED STATES RUBBER CO. et al.

(District Court, D. Massachusetts.   January 11, 1916.)

### No. 5.

1. MONOPOLIES ⬤⟹17—COMBINATIONS PROHIBITED—SALES OF GOODS.

Six of the defendants, all of whom were citizens of and doing business in Massachusetts, were manufacturers of lasts or forms used in making rubber boots and shoes, and were the only makers thereof in the United States. A rubber company acquired control of other corporations engaged in the manufacture and interstate sale of rubber footwear, for the purpose of controlling them and controlling prices of such goods, and with the intent of restricting and controlling the interstate sale and transportation of lasts made separate agreements with each of the last manufacturers whereby they agreed to sell no lasts for a certain period, except to persons and corporations specified by it. By means of these agreements it restricted and controlled the interstate sale of lasts, and deprived other persons engaged in the interstate sale of rubber footwear, including plaintiff, of the ability to procure lasts. *Held* that, where it did not appear that any of the last manufacturers intended to restrict and control trade, or knew of the contracts between the rubber company and the other last manufacturers, or knew of its purpose or intent to restrain and control trade, and none of such manufacturers occupied any dominating position in the trade in lasts, there was no combination or conspiracy in restraint of the trade, and the last manufacturers were within their rights in making the contracts, and were not liable under Sherman Act July 2, 1890, c. 647, 26 Stat. 209, for having done so.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 13; Dec. Dig. ⬤⟹17.]

2. MONOPOLIES ⬤⟹28—ACTIONS FOR DAMAGES—COMBINATIONS DISTINGUISHED FROM CONTRACTS.

A declaration, setting out the facts mentioned, stated no combination or conspiracy in restraint of trade, as against the rubber company, and was to be supported, if at all, as alleging contracts made by it in unreasonable restraint of interstate trade, or a monopolization of that trade.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. ⬤⟹28.]

3. MONOPOLIES ⬤⟹28—ACTIONS FOR DAMAGES—PERSONS ENTITLED TO DAMAGES.

The fact that plaintiff was a citizen of Massachusetts, manufacturing rubber footwear in that state, and was not a dealer in lasts, and only desired to buy lasts for its own use, and not for resale, did not deprive the restraint of trade, so far as it affected plaintiff, of the interstate character necessary to bring it within the Sherman Act, as the restraint or control obtained by the rubber company was a single thing, not confined to Massachusetts, and restricted the trade of the last manufacturers with everybody, including citizens of their own state.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. ⬤⟹28.]

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. MONOPOLIES ☞28—ACTIONS FOR DAMAGES—PLEADING—"TRADE"—"CON-
TROL"—"MONOPOLY."

A declaration, in an action for damages against the rubber company,
alleging that by means of such contracts it illegally restricted, limited,
and controlled the interstate sale and transportation of lasts, though
not explicitly and in the language of the statute alleging a monopolizing,
or an attempt to monopolize, stated a cause of action under Sherman Act,
§ 2 (U. S. Comp. St. 1913, § 8821), prohibiting every person from monopo-
lizing or attempting to monopolize any part of the trade or commerce
among the several states, as "trade" necessarily involves both buying and
selling, and a complete domination of either is a domination of the trade,
and "control," as used in the declaration, was the substantial equivalent
of "monopoly," as used in the statute.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig.
☞28.

For other definitions, see Words and Phrases, First and Second Series,
Monopoly; Trade; Control.]

Action by the Hood Rubber Company against the United States
Rubber Company and others. On demurrer to the declaration. De-
murrer of the defendant named overruled, and demurrers of the other
defendants sustained.

Henry E. Warner and Arthur H. Brooks, both of Boston, Mass.,
for plaintiff.

Robert M. Morse, Wilford D. Gray, George L. Huntress, and
Homer Albers, all of Boston, Mass., for defendant United States Rub-
ber Co.

Chamberlain & Fletcher, of Brockton, Mass., for defendants De-
land and Cary.

MORTON, District Judge. This is an action at law under the
Sherman Act (26 Stat. 209) to recover threefold damages. The de-
fendants are the United States Rubber Company, a New Jersey cor-
poration engaged in the manufacture of rubber footwear (which will
be referred to as the defendant where not otherwise indicated), and
six other persons and corporations, all citizens of Massachusetts, and
engaged separately in that state in the manufacture of lasts used in
making rubber boots and shoes. The defendants have demurred, and
the question is whether the declaration states a cause of action.

It contains seven counts, the first of which, as I construe it, describes
the following business situation: Lasts or forms are necessary tools
or appliances in the manufacture of rubber boots and shoes. In
April, 1896, the only makers of them in the United States were the
six last-named defendants, who, as it happened, were all citizens of
Massachusetts, and did business here, and nowhere else. They sold
their product extensively in interstate commerce. In the month re-
ferred to the principal defendant acquired control of ten different
corporations, organized under the laws of several different states,
each of which was engaged in the manufacture and interstate sale
of rubber footwear. It did this for the purpose of controlling such
rubber companies as were then, or might thereafter be, engaged in

the interstate sale of rubber boots and shoes, and of controlling the prices asked for such goods.

In manufacturing rubber footwear, lasts are absolutely essential. The United States Rubber Company, with the intent of restricting and controlling the interstate sale and transportation of them, made in April, 1896, agreements with every one of the last manufacturers, whereby they separately agreed to sell no lasts until January 1, 1897, except to such persons and corporations as might be specified by the defendant. By means of these agreements the defendant restricted and controlled the interstate sale of lasts for rubber boots and shoes from the time when the agreements were made, in April, 1896, until they expired on January 1, 1897, and during that interval deprived other persons engaged in interstate sale of rubber footwear of all opportunity to procure lasts in this country.

In April, 1896, F. C. Hood and A. N. Hood left the employ of one of the rubber companies then controlled by the defendant, and began a rubber business under the name of the Hood Rubber Company. They bought land, and contracted for buildings and machinery to manufacture rubber boots and shoes, and took steps to form a corporation for that purpose. Before the corporation was chartered, F. C. Hood "on behalf of such corporation to be formed as aforesaid sent an order for" lasts to one of the defendant last companies (declaration, clause 9). This company wrote to the principal defendant, asking to be released from its agreement not to sell to other than designated persons. The defendant declined to grant such release by a letter which is set out in the declaration, and might be found, in connection with the other facts alleged, to evidence an intent to restrict or monopolize the trade in lasts by the contracts referred to. Thereafter F. C. Hood, "doing business as the Hood Rubber Company, and acting on behalf of himself and others who were forming the plaintiff corporation of the same name, endeavored to procure lasts from each and every one of said last companies, * * * and each and every one of the last companies refused to furnish lasts to the plaintiff, or to any rubber company not named in its contract with the defendant" (declaration, par. 10). Hood, on behalf of the plaintiff, made every endeavor to procure lasts within the United States, but was unable to do so. On or about October 12, 1896, the plaintiff corporation received its charter, and immediately afterward made further efforts to buy lasts from the manufacturers of them, but was unable to obtain any suitable ones until the expiration of said contracts relating to them.

The contracts between the United States Rubber Company and the last companies greatly restricted the trade in such lasts and subjected such trade to the absolute control of the principal defendant; and the contracts, conspiracies, and monopolies between the defendant and the last companies were made with that intent, and to accomplish that result. There are allegations of damage to the plaintiff by the defendants' acts. This is the case stated in the first count.

Each of the remaining counts relates especially to some particular one of the contracts referred to between the defendant and the last

companies; each incorporates by reference the first count, so far as material, alleges that "said contract, agreement, or conspiracy was illegal and void," and claims damages on account thereof.

[1] There are no allegations that any one of the last companies knew that the rubber company was making contracts with other last companies, or was aware of any purpose or intent by the rubber company .to restrain and control trade by the contract made with it, or was informed in any way that its contract was part of an effort by the rubber company to control and restrict interstate commerce by a series of such contracts tieing up all the last companies. No one of the last companies, apparently, occupied any dominating position in that trade. Upon the allegations of the declaration, nothing more is shown than that each independently agreed to hold all its product adapted to rubber footwear for the defendant, or subject to its orders.

In the absence of any purpose or intent on the part of any of the last companies to restrict and control trade by its contract, and of any knowledge that the other party to the contract was making it in pursuance of a plan to restrict, control, or monopolize interstate commerce, and of any sufficient reason to believe that such would be the natural effect of the contract with the defendant, the last companies were, in my opinion, clearly within their rights in making the contracts in question, and are not liable under the Sherman Act for having done so. Upon the same reasoning, it seems to me apparent that this declaration does not allege any combination or conspiracy in restraint of the trade in lasts. There is an entire absence of that joint or common purpose and action which are the essence of a combination or conspiracy. The attempted control was reached for by the rubber company on its own account, and, so far as is alleged, without taking any other person into its confidence or apprising any other defendant of its intent. No other person participated or knowingly assisted in the illegal plan afoot. As to the last companies, no cause of action under the Sherman Act is stated.

[2] As against the United States Rubber Company, the declaration does not set out any combination or conspiracy in restraint of trade. It is to be supported, if at all, as alleging contracts made by the rubber company in unreasonable restraint of interstate trade, or a monopolization of that trade. It plainly relates to restraint or control of trade in lasts, not in boots and shoes, and it alleges a complete and intentional restraint and control thereof by the defendant.

[3] The first important contention of the defense is that the restriction and control relied on by the plaintiff cover only the manufacture and sale of lasts by companies within a single state, Massachusetts; that the plaintiff is a citizen of Massachusetts, and manufactures only in that state; that the plaintiff is not a dealer in lasts, but only desired to buy them for its own use; that all purchases of lasts by the plaintiff would have been intrastate transactions; and that the alleged restraint, so far as it affected the plaintiff, was not of an interstate character, and is not within the Sherman Act.

If the defendant's agreements with the last companies had related only to trade within Massachusetts, unquestionably the plaintiff would

have had no right of action under the Sherman Act. Addyston Pipe & Steel Co. v. U. S., 175 U. S. 211, 20 Sup. Ct. 96, 44 L. Ed. 136. But the restraint and control actually and intentionally obtained are not so limited; they include all the United States, Massachusetts among them; and they restrict the trade of the last companies with everybody, including, of course, citizens of their own state. The defendant's control within the state was part of the larger complete control which it designed to secure; there was no separate agreement relating only to the trade in lasts within Massachusetts. If the plaintiff had happened to reside out of Massachusetts, it would seem clear, on this branch of the case, that the Sherman Act applied and had been violated. If the plaintiff, though residing in Massachusetts, had been a dealer in lasts, selling them beyond the borders of that state, the defendant's alleged conduct would have interfered with the flow of that interstate trade in which the plaintiff was engaged, and the case would have come within the decisions in Gibbs v. McNeeley, 118 Fed. 120, 55 C. C. A. 70, 60 L. R. A. 152 (C. C. A. 9th Circuit), and Hale v. Hatch & North Coal Co., 204 Fed. 433, 122 C. C. A. 619 (C. C. A. 2d Circuit).

Does the fact that the person injured by an interstate restriction or control of an illegal purpose and character happens to reside within the same state where the entire trade which is the subject of the restriction or control originates deprive him of the right to a remedy under the statute? In other words, is the statute applicable to such a case? It seems to me that it is. The restraint or control obtained by the defendant, and by which the plaintiff was injured, was a single thing, not confined to Massachusetts, but extending to and including New York and Pennsylvania, for instance, and other states into which the trade might reach. Such a control the defendant had, upon the allegations of the declaration, no right to acquire, and, having done so intentionally and unlawfully, it is liable for the consequences of its illegal conduct. I do not think that the decision in the Addyston Pipe Case, 175 U. S. 211, 20 Sup. Ct. 96, 44 L. Ed. 136, is inconsistent with these views. What was excepted from the injunction in that case, as I understand it, was separate agreements among defendants within a single state, relating only to trade within that state. The restraint condemned in the Reading Case (U. S. v. Reading, 226 U. S. 324, 33 Sup. Ct. 90, 57 L. Ed. 243) occurred almost entirely within the state of Pennsylvania; but it was intended to reach and did reach beyond the borders of that state, and it was held illegal. See Chattanooga Foundry Co. v. City of Atlanta, 203 U. S. 390, 27 Sup. Ct. 65, 51 L. Ed. 241; Loewe v. Lawlor, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. 488, 13 Ann. Cas. 815; s. c., 235 U. S. 522, 35 Sup. Ct. 170, 59 L. Ed. 341.

[4] The declaration does not explicitly and in the language of the statute allege a monopolizing or an attempt to monopolize. It does charge that "by means of such contracts the said defendant the United States Rubber Company illegally and unlawfully restricted, limited, and controlled the interstate and foreign sale and transportation of lasts" (count 1, par. 8). Trade necessarily involves both buying and

selling, and a complete domination of either side is a denomination of the trade in question. Taking the declaration as a whole, it clearly alleges that the defendant acquired a complete and exclusive control of the selling trade in lasts for rubber footwear. It seems to me that the word "control," as used in the declaration, is the substantial equivalent of "monopolize," as used in the statute, and that by the contracts in question the defendant, upon the allegations of the declaration, obtained an illegal monopoly of the trade in lasts for rubber footwear. A cause of action is therefore stated under the second section of the statute. It should perhaps be noticed that the declaration was filed July 2, 1902, when the law on this subject was not so far developed as it has since become, and when the technical terms applicable to cases of this character were less certain than at present.

The demurrers of all the defendants except the United States Rubber Company should be sustained; the demurrer of the United States Rubber Company should be overruled.

So ordered.