## UNITED STATES v. WALTHAM WATCH CO. et al.

## SAME v. HAMILTON WATCH CO. et al.
## SAME v. ELGIN NAT. WATCH CO. et al.

District Court, S. D. New York.

Nov. 5, 1942.

---

527

Samuel S. Isseks and Frederick J. Whelan, both of Washington, D. C., Lawrence J. McManus, of New York City, and Thurman Arnold, Edward H. Miller, and Carson Glass, all of Washington, D. C., for plaintiff.

William H. Collins, of Washington, D. C. (William R. Altman, of New York City, of counsel), for defendant Waltham.

Cohen, Cole, Weiss & Wharton, of New York City, for defendants Louis Manheimer & Bro., Inc., Joseph C. Goodman and Samuel Berneri.

Landels, Weigel & Crocker, of San Francisco, Cal., Wellman, Smyth, Lowenstein & Fennelly, of New York City, and Charles L. Miller, of Lancaster, Pa., for other defendants.

Byerly, Watson & Simonds, of New York City, for defendants Elgin National Watch Company and others.

Wickes, Riddell, Bloomer, Jacobi & McGuire, of New York City (Edward R. Johnston, of Chicago, Ill., of counsel), for other defendants.

Abner J. Grossman, of New York City, for Jacob J. and Bernard J. Schmukler.

RIFKIND, District Judge.

Defendants in each of the above-entitled actions have demurred to an indictment charging them with having engaged in an unlawful combination and conspiracy in restraint of interstate trade and commerce in

violation of the Sherman Act, 15 U.S.C.A. § 1. Some of the defendants have also moved to quash the indictments. One defendant in each action is the manufacturer of watches and watch products and the others are officers of such manufacturer, accredited distributors of watches and watch products, and officers of such distributors. Except for differences as to names, dates and places the indictments are similar both in form and in substance.

The indictments are demurred to upon two main grounds: one, that they are indefinite, ambiguous, vague and uncertain and do not comply with the basic rules of criminal pleading; and, two, that they fail to allege facts showing that the defendants have in any way violated the Sherman Act. So far as pertinent that act reads as follows, 15 U.S.C.A. § 1: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal. * * * Every person who shall make any contract or engage in any combination or conspiracy declared by sections 1–7 of this title to be illegal shall be deemed guilty of a misdemeanor. * * *"

To avoid confusion, the following discussion is addressed to the indictment in the Hamilton Watch Company case, but whatever is said with reference to that indictment applies with equal force and effect to the indictments in the other two cases. The indictment is in one count and is divided into seven parts which in turn are subdivided into paragraphs. Part I sets forth the period of time covered by the indictment; part II contains definitions; part III names and identifies the defendants; part IV describes the nature of the interstate trade and commerce involved; part V charges and describes the combination and conspiracy; part VI states the effect of the combination and conspiracy on interstate trade, and part VII relates to jurisdiction and venue.

The attack on the sufficiency of the indictment is directed to the charging paragraphs set forth in part V. These allege in substance that the defendants knowingly entered into and engaged in a wrongful combination and conspiracy "to eliminate, prevent and restrict the sale and distribution of Hamilton products * * * both at wholesale and retail, and to restrain and restrict the sale of Hamilton products by, and to discriminate against, certain catalog houses, upstairs houses, sub-jobbers, wholesalers and retailers" which combination and conspiracy is in restraint of trade (par. 86). It is then alleged that, "As part of said combination and conspiracy the defendants have combined and conspired to prevent, in the manner and by the means hereinafter set forth, catalog houses, upstairs houses, sub-jobbers and retailers from buying, selling, distributing or dealing" in Hamilton products (par. 87); "have combined and conspired to meet and confer from time to time with one another, and at such meetings and conferences to determine arbitrarily so-called proper outlets for Hamilton products, to discriminate arbitrarily against other outlets * * *, and to fix, agree to, and maintain policies detrimental to the heretoforementioned catalog houses, upstairs houses, sub-jobbers and retailers, and to the free flow of trade and commerce throughout the several states of the United States" (par. 88); "have combined and conspired to prevent jobbers, sub-jobbers, upstairs houses and retailers from selecting their outlets, customers and accounts" (par. 89); and "have combined and conspired to prevent retailers, through threats, and fear of being excluded from the list of retailers who might sell Hamilton products, and through exclusion from such list, from selling to other retailers, catalog houses, upstairs houses and sub-jobbers" (par. 90).

There is a difference of opinion between the defendants and the government as to the nature of the allegations in the next succeeding paragraph (par. 91). It is there alleged that, "Pursuant to and in execution of the said unlawful combination and conspiracy, the defendants did meet and held conferences with one another, and with other distributors, for the purpose of effectuating the aforesaid combination and conspiracy, and said defendants have regularly and continuously entered into these agreements and have done those things which they combined and conspired to do, as hereinbefore alleged, and more particularly have done, among others, the following acts and things:" Then follows in seven sub-paragraphs numbered a to g certain acts allegedly performed by the defendants. Thus, it is alleged, (a) that they met and held conferences with each other in New York, Chicago and elsewhere at various unknown times, and at such meetings they agreed upon the elimination of certain retailers as outlets for Hamilton products; (b) that they communicated with one another by tele-

phone and other means and at such times agreed upon the elimination of certain catalog houses, upstairs houses, sub-jobbers and retailers, as outlets for Hamilton products; (c) that they maintained blacklists containing the names of certain concerns who were "not to be sold" Hamilton products; (d) that they agreed upon a means known as "tracing", and did trace, watch numbers for the purpose of determining the last immediate source to the consumer, and that they also agreed to take, and did take, disciplinary action against intermediaries if such source was any concern on the blacklist; (e) that they agreed to employ "shoppers", and did employ "shoppers", for the purpose of discovering all sources of Hamilton products, and for the purpose of taking disciplinary action, and in order to blacklist certain outlets, and that they did take such disciplinary action and did blacklist such outlets; (f) that they agreed to, and did, institute a policy of daily and weekly reports of all sales for the enforcement of restrictions on wholesalers and retailers; and, (g) that they agreed to, and did, institute a policy of "zoning distribution" and of allocating territories to accredited distributors for the purpose of a more expedient enforcement of the blacklisting and boycotting policy.

The defendants contend that the foregoing allegations in paragraph 91 are a recital of overt acts performed by the defendants in furtherance of the object of the alleged combination and conspiracy, and may not be considered in determining the sufficiency of the conspiracy charge. They also contend that the allegations in the charging paragraphs of the indictment, paragraphs 86 to 90, inclusive, state conclusions of law only and fail to describe and particularize the offense attempted to be charged, as required by law. The government, on the other hand, contends that the allegations in paragraph 91 state the means and methods by which the combination and conspiracy were effectuated, and must be read with the charging paragraphs.

■ At this point it may be well to restate a few fundamental principles applicable to indictments in general and to indictments under the Sherman Act. In the first place an indictment should furnish the defendant with such a description of the charge against him as will enable him to defend himself and to avail himself of his conviction or acquittal as a bar to any further prosecution for the same offense.

United States v. Cruikshank, 1875, 92 U.S. 542, 23 L.Ed. 588. All material facts embraced in the definition of the offense must be alleged and omissions cannot be supplied by intendment or implication. The charge "must be made directly, and not inferentially, or by way of recital". United States v. Hess, 1888, 124 U.S. 483, 8 S.Ct. 571, 573, 31 L.Ed. 516. Where the definition of the crime is in generic terms, the charge must not be couched in the same terms but it must descend to particulars. United States v. Carll, 1881, 105 U.S. 611, 26 L.Ed. 1135. If the essential elements of the offense are pleaded the indictment is sufficient even if it could have been made more definite and certain. Defects of form which are not prejudicial should be disregarded. Hagner v. United States, 1932, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861. Where, however, two or more distinct offenses are pleaded in one count, the count is void for duplicity. Creel v. United States, 8 Cir., 1927, 21 F.2d 690.

■ In an indictment for conspiracy the facts showing the conspiracy must be sufficiently alleged and they cannot be aided by averments of overt acts performed in furtherance of the object of the conspiracy. United States v. Britton, 1883, 108 U.S. 199, 2 S.Ct. 531, 27 L.Ed. 698. This rule has been held to be applicable to indictments under the Sherman Act. Steers v. United States 6 Cir., 1911, 192 F. 1. But in Joplin Mercantile Co. v. United States, 1915, 236 U.S. 531, 35 S.Ct. 291, 59 L.Ed. 705, the Court intimated that the conspiracy clause in an indictment may refer for light upon its meaning to the clauses setting forth the overt acts.

■ In an indictment under the Sherman Act it is not necessary to allege in detail the evidence of the conspiracy and conspiracy need not be described with the same degree of particularity required in describing a substantive offense. Mercer v. United States, 3 Cir., 1932, 61 F.2d 97. Nor is it necessary that an indictment under the Sherman Act allege overt acts in furtherance of the conspiracy charged. Nash v. United States, 1913, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232.

■ In the indictment under review, the allegations in paragraphs 86 to 90, standing alone, are not sufficient to charge an offense under the Sherman Act. They state conclusions only and do not furnish the defendants with a sufficient description

of the charge against them to enable them to prepare their defenses. No facts are alleged in these paragraphs to show that the purpose of the alleged conspiracy was illegal, or if the purpose was legal, that the means used were illegal. One or the other is necessary. Pettibone v. United States, 1893, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419. Evidently the government did not intend that these paragraphs, standing alone, should be sufficient to charge the commission of the crime in question for in paragraph 87 it is alleged that "the defendants combined and conspired to prevent, in the manner and by the means hereinafter set forth catalog houses * * * from buying, selling, distributing or dealing in Hamilton products." Thus, reference is made to other parts of the indictment in support of the allegations in the charging paragraphs.

■ It is my opinion that the means referred to in paragraph 87 are pleaded in paragraph 91. It is there alleged that the defendants, the manufacturers and approved distributors of Hamilton products, met, conferred and communicated with each other and as a result of such meetings, conferences and communications agreed upon the elimination of certain outlets for Hamilton products. They agreed to a "tracing" plan, to employ "shoppers", to institute a policy of daily and weekly reports of sales and to institute a policy of allocating territories to accredited distributors. These are the means employed by the defendants by which the purpose of the combination and conspiracy was to be effected. By these means the blacklisted outlets were to be prevented from obtaining Hamilton products. The allegations of paragraph 91 are not described as overt acts. If I should so treat them I would have to leave the phrase "by the means hereinafter set forth" dangling as the expression of an unperformed promise by the pleader; whereas if I regard them as allegations of means they fit naturally into the literary form of the indictment. Surely the latter is to be preferred. A similar group of allegations was treated as descriptive of the means for carrying the conspiracy into effect in United States v. General Motors Corp., 7 Cir., 1941, 121 F. 2d 376, certiorari denied 314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. 497. See, also, Mercer v. United States, 3 Cir., 1932, 61 F.2d 97, and United States v. MacAndrews and Forbes Co., C.C.S.D.N.Y., 1906, 149 F. 823, appeal dismissed, 212 U.S. 585, 29 S.Ct. 681, 53 L.Ed. 661.

■ It is also alleged in paragraph 91 that the defendants blacklisted certain outlets; traced watches to see that they did not come from blacklisted firms; employed shoppers for the same purpose and for the purpose of determining proper outlets; boycotted intermediaries who dealt with blacklisted firms; instituted a policy of daily and weekly reports of sales; and zoned and allocated territories. The fact that these are also descriptive of overt acts performed by the defendants in furtherance of the object of the conspiracy does not detract from their force as allegations of means and methods.

Undoubtedly the art of drafting indictments might have made a greater contribution to the form of the indictment under review than is manifest in its language but I do not think that the defendants' rights have been prejudiced. The defects are not of substance. They do not warrant striking down the indictment. Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861. Decisions upholding technical objection to an indictment are the exceptions rather than the rule. United States v. General Motors Corp., supra.

■ Nor is the indictment bad for duplicity. The allegations in paragraph 86 do not allege three conspiracies as contended by the defendants. When read in conjunction with the other charging paragraphs and with the allegations of the means employed by the defendants, it is clear that the indictment alleges one conspiracy to blacklist certain outlets for Hamilton products by (1) preventing these outlets from obtaining such products and (2) preventing other outlets, whether wholesalers or retailers, from selling to the blacklisted concerns.

I am of the opinion, therefore, that with the means supporting the charge, the indictment when construed in its entirety, furnishes the defendants with a sufficient description of the charge against them. Whether the charge is sufficient to show a combination and conspiracy within the purview of the Sherman Act, however, is another question.

The defendants contend that the indictment does not allege facts which constitute a violation of the Sherman Act in that it fails to show (1) that interstate trade and commerce was unreasonably restrained by

the acts charged; (2) that the defendants entered into any unlawful agreement with each other; (3) what the purpose of the alleged conspiracy was; (4) how much of the watch market is controlled by the defendants, and how much of the trade in watches generally and in Hamilton products in particular was affected by the alleged conspiracy; (5) that competition was in fact eliminated; (6) that the prices, or the quantity, or quality of watch products were affected in any way by the defendants; (7) that the defendant distributors were coerced into discriminating against certain outlets, or that defendants conspired to boycott and to refuse to sell to certain outlets; and (8) that the public was adversely affected by the alleged combination. The defendants also contend that the acts charged in the indictment are consistent with the exercise of lawful rights, and are consistent with their right to select customers for their products and to protect the good will of their businesses.

■ It is undoubtedly true that not every combination and conspiracy in restraint of trade is illegal and that only such restraints as are unreasonable are forbidden by the Sherman Act. Standard Oil Co. v. United States, 1910, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas.1912D, 734; United States v. American Tobacco Co., 1911, 221 U.S. 106, 31 S.Ct. 632, 55 L.Ed. 663; Board of Trade of Chicago v. United States, 1918, 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683, Ann.Cas.1918D, 1207; Appalachian Coals, Inc. v. United States, 1933, 288 U.S. 344, 53 S.Ct. 471, 77 L.Ed. 825; Sugar Institute, Inc. v. United States, 1936, 297 U.S. 553, 56 S.Ct. 629, 80 L.Ed. 859; Apex Hosiery Co. v. Leader, 1940, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044. However, any combination or conspiracy that operates directly on prices or price structure and has for its purpose the fixing of prices is illegal per se. Such agreements are without more, unreasonable restraints of trade. United States v. Socony-Vacuum Oil Co., Inc., 1940, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129. Likewise, a combined refusal to deal with any one as a means of preventing him from dealing with a third person is a boycott and a boycott is prima facie unlawful. Fashion Originators Guild v. Federal Trade Commission, 2 Cir., 1940, 114 F.2d 80, affirmed 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949; United States v. King, D.C.Mass.1915, 229 F. 275. See, also,

Eastern States Retail Lumber Dealers' Ass'n v. United States, 1914, 234 U.S. 600, 34 S.Ct. 951, 58 L.Ed. 1490, L.R.A.1915A, 788; Loewe v. Lawlor, 1908, 208 U.S. 274, 28 S.Ct. 301, 52 L.Ed. 488, 13 Ann.Cas. 815. Such combinations and conspiracies are not excused because they produced good results or because they were induced by good motives. Thomsen v. Cayser, 1917, 243 U. S. 66, 37 S.Ct. 353, 61 L.Ed. 597, Ann.Cas. 1917D, 322. Nor is the Sherman Act limited to combinations which fix prices, or limit production, or bring about deterioration in quality. Fashion Originators Guild v. Federal Trade Commission, 1941, 312 U. S. 457, 61 S.Ct. 703, 85 L.Ed. 949. The character of the restraint on interstate commerce and not the volume of commerce restrained is the proper yardstick for determining whether the Sherman Act, 15 U. S.C.A. § 1 et seq., has been violated. United States v. General Motors Corp., 7 Cir., 1941, 121 F.2d 376, certiorari denied 314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. 497.

■ In the instant case the defendants are accused of conspiring to prevent certain outlets, both wholesale and retail, from selling or dealing in Hamilton products. These outlets are blacklisted; and to prevent them from obtaining Hamilton products the defendants are charged with having conspired to coerce other outlets into refusing to deal in Hamilton products with the blacklisted concerns. This conspiracy is to be accomplished by means of tracing watches, by use of hired "shoppers", by a system of reports and by zoning and allocation of territories. Those found dealing with the blacklisted concerns are themselves threatened with being boycotted and excluded from selling Hamilton products. Thus, defendants are accused of having conspired to coerce third parties into refusing to deal with the blacklisted concerns. This is such a boycott as was declared to be prima facie unlawful in Fashion Originators Guild v. Federal Trade Commission and United States v. King, supra. As such it makes no difference what is the purpose or object of the blacklisting, nor does it make any difference how much commerce is affected by the combination, or that the prices, or the quantity and quality of Hamilton products are unaffected. These are not essential elements of the crime and the indictment need not contain allegations showing such facts.

■ There is no merit to the contention that the acts charged in the indict-

ment are consistent with the lawful right of the defendants to select their own customers. Undoubtedly, a manufacturer, or a wholesaler, or a retailer has a right to sell or not to sell as he sees fit. A wholesaler may refuse for any reason or without reason to sell to a retailer and a retailer may similarly refuse to buy from a wholesaler. Likewise, a wholesaler or a manufacturer has the right to announce the circumstances under which he will refuse to sell and he has the power to withhold his goods from dealers who will not resell at prices fixed by him. United States v. Colgate & Co., 1919, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992, 7 A.L.R. 443; United States v. A. Schrader's Son, Inc., 1920, 252 U.S. 85, 40 S.Ct. 251, 64 L.Ed. 471; Binderup v. Pathe Exchange, Inc., 1923, 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308; Frey & Son, Inc. v. Cudahy Packing Co., 1921, 256 U.S. 208, 41 S.Ct. 451, 65 L.Ed. 892; Federal Trade Commission v. Beech-Nut Packing Co., 1922, 257 U.S. 441, 42 S.Ct. 150, 66 L.Ed. 307, 19 A.L.R. 882. But, as pointed out above, a combined refusal to deal with any one as a means of preventing him from dealing with a third party is illegal per se and a direct violation of the Sherman Act. An act lawful when done by one may become unlawful when done by many acting in concert, taking on the form of conspiracy which is prohibited if harmful to the one against whom the concerted action is directed. Federal Trade Commission v. Raymond Bros.-Clark Co., 1924, 263 U.S. 565, 44 S.Ct. 162, 68 L.Ed. 448, 30 A.L.R. 1114. Here the defendant manufacturer could have refused to sell to any or all wholesalers or to any or all retailers for any reason, and he could have announced to such wholesalers and retailers the conditions under which he would sell to them. Likewise, the wholesale distributors could have refused to sell to other wholesalers or to retailers for any reason, but the manufacturer and the wholesale distributors could not combine and conspire to refuse to sell to wholesalers and retailers who failed to join a boycott against certain blacklisted concerns.

Furthermore, it is alleged in the indictment that the sales of watch products were made outright by the manufacturer to the accredited distributors who in turn sold to other wholesalers and to retailers. As to sales actually made the manufacturer was without power, by agreement with the distributors or otherwise, to impose resale restrictions upon the purchasers and sub-purchasers of his products except in the limited sense permitted by the Miller-Tydings amendment to the Sherman Act, 15 U.S.C.A. § 1, as amended. Ethyl Gasoline Corp. v. United States, 1940, 309 U.S. 436, 60 S.Ct. 618, 84 L.Ed. 852; Dr. Miles Medical Co. v. John D. Park & Sons Co., 1911, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502; United States v. General Motors Corp., supra.

The contention that the acts charged were necessary to protect the good will of defendant's business is also without merit. It is proper for a manufacturer to promote good will and to protect his business against inefficient and unscrupulous dealers. But there is a limit to the distance a manufacturer may go in controlling distribution of his products. Good will can be protected in many ways without coercion of dealers. United States v. General Motors Corp., supra. Even if the acts perpetrated by the blacklisted firms were tortious in nature they did not justify a combination and conspiracy in restraint of trade. Fashion Originators Guild v. Federal Trade Commission, supra. See, also, International Business Machines Corp. v. United States, 1936, 298 U.S. 131, 56 S.Ct. 701, 80 L.Ed. 1085.

It is not necessary to spend much time on the contention that the indictment contains no definite, unequivocal charge that the defendants entered into any unlawful agreement with each other, in view of our holding that the means enumerated in paragraph 91 should be read in conjunction with the other charging paragraphs. When so read I do not think it can be disputed that there is a definite charge that the defendants entered into an unlawful agreement. In any event, a conspiracy in restraint of trade is different from a contract in restraint of trade. "A conspiracy is constituted by an agreement, it is true, but it is the result of the agreement, rather than the agreement itself," United States v. Kissel, 218 U.S. 601, 31 S.Ct. 124, 126, 54 L.Ed. 1168. No formal agreement is necessary for the formation of a conspiracy. It may be shown by concert of action among the conspirators, all working together for a common purpose. Marino v. United States, 9 Cir., 1937, 91 F.2d 691, 113 A.L.R. 975, certiorari denied Gullo v. United States, 302 U.S. 764, 58 S.Ct. 410, 82 L.Ed. 593. Even if we assume that the indictment contains no spe-

cific allegation that the defendants entered into an agreement, "the acts alleged necessarily involve a continuing agreement to do them". United States v. Patterson, D.C.S.D.Ohio, 1912, 201 F. 697, 721, reversed on other grounds, 6 Cir., 222 F. 599. See, also, Thomsen v. Cayser, supra.

 The point is raised on behalf of a number of the distributor defendants that because they were required to follow the direction of a single manufacturer as to the distribution of the products of that manufacturer, that they may not be held as violators of the Sherman Act. In support of that proposition the case of Johnson v. J. H. Yost Lumber Co., 8 Cir., 1941, 117 F.2d 53, is cited. That case stands for the proposition that a dealer who refuses to sell to a prospective customer because of pressure brought upon him by a group of conspirators who seek to drive such buyer out of business, is not a co-conspirator and is not guilty of violating the Sherman Act unless he knew of the conspiracy. The Court held that his refusal to deal with the person conspired against may have furthered the object of the conspiracy but it did not necessarily follow that he knew of the conspiracy. Similarly, in the case at bar, if, as charged, certain retailers and wholesalers were coerced into refusing to deal with blacklisted concerns, such retailers and wholesalers would further the object of the conspiracy, but it would not make them co-conspirators unless they knew of the conspiracy. No attempt is made to charge them with such knowledge and they have not been joined as defendants. Those who have been indicted are not such retailers and wholesalers but are the persons who are accused of having conspired to blacklist certain concerns and to coerce others into refusing to deal with such concerns. Nor is the case of Hood Rubber Co. v. United States Rubber Co., D.C.Mass.1916, 229 F. 583, in point. There the court construed the complaint to allege that each of a group of manufacturers independently agreed to hold its entire product for the defendant. There was an absence of a "joint and common purpose and action which are the essence of a combination and conspiracy".

In conclusion, therefore, I am of the opinion that the indictments in the three cases at bar furnish the defendants with a sufficient description of the charges against them to enable them to prepare their defenses, and to avail themselves of convictions or acquittals as a bar to another prosecution for the same offense. The facts alleged, if proved beyond a reasonable doubt, are sufficient to support a conviction.

Accordingly, the demurrers are overruled and the motions to quash are denied.

Submit orders.