UNITED STATES of America

v.

**UNITED STATES STEEL CORPORATION, Bethlehem Steel Company, National Steel Corporation, Great Lakes Steel Corporation, Jones & Laughlin Steel Corporation, Armco Steel Corporation, Republic Steel Corporation, Wheeling Steel Corporation, James P. Barton and W. J. Stephens, Defendants.**

United States District Court
S. D. New York.
Aug. 12, 1964.

See also D.C., 233 F.Supp. 154.

John J. Galgay, Chief, New York Office, Antitrust Division United States Dept. of Justice, New York City, Samuel Karp, Antitrust Division United States Dept. of Justice, Washington, D. C. (Philip F. Cody, John H. Earle, Marshall C. Gardner, Augustus A. Marchetti, and Baddia J. Rashid, Attys., Dept. of Justice, on the brief), for the United States.

White & Case, New York City, for defendant, United States Steel Corp.

Cravath, Swaine & Moore, New York City, for defendant, Bethlehem Steel Co.

Cleary, Gottlieb, Steen & Hamilton, New York City, for defendants, National Steel Corp. and Great Lakes Steel Corp.

Sullivan & Cromwell, New York City, for defendant, Jones & Laughlin Steel Corp.

Breed, Abbott & Morgan, New York City, for defendant, Armco Steel Corp.

Jones, Day, Cockley & Reavis, Cleveland, Ohio, for defendant, Republic Steel Corp.

Wickes, Riddell, Bloomer, Jacobi & McGuire, New York City, for defendant, Wheeling Steel Corp.

Simpson, Thacher & Bartlett, New York City, for defendant, James P. Barton.

Rosenman, Colin, Kaye, Petschek & Freund, New York City, for defendant, W. J. Stephens.

WEINFELD, District Judge.

This is a consolidated motion by all the defendants, eight corporations and two individuals, to dismiss the indictment herein, charging them and others with conspiracy in restraint of trade in carbon steel sheets in violation of section 1 of the Sherman Act.[1] The motion is based upon the ground that it fails to charge an offense with the definiteness, certainty and specificity required by the Fifth and Sixth Amendments to the Constitution and Rule 7(c) of the Federal Rules of Criminal Procedure.

The indictment contains one count, divided into seven headings, within each of which are included various paragraphs. The headings are: "I—DEFENDANTS"; "II—THE CO-CONSPIRATORS"; "III—DEFINITIONS"; "IV—NATURE OF TRADE AND COMMERCE"; "V—OFFENSE CHARGED"; "VI—EFFECTS"; "VII—JURISDICTION AND VENUE."

The first eight paragraphs of the indictment identify the defendants and three alleged co-conspirators not named as defendants, define "carbon steel sheets" and "extras" and describe the interstate aspect of trade and commerce in carbon steel sheets.

Paragraphs 9, 10 and 11 are under "OFFENSE CHARGED." Paragraph 9 alleges that the defendants and the alleged co-conspirators, beginning in 1955 and continuing to at least 1961, "engaged in an unlawful combination and conspiracy in unreasonable restraint of the aforesaid interstate trade and commerce, in violation of section 1 of the * * * Sherman Act."

Paragraph 10 alleges that: "The aforesaid combination and conspiracy consisted of a continuing agreement, understanding and concert of action among the defendants and co-conspirators to eliminate price competition in the sale of carbon steel sheets."

Paragraph 11 alleges:

"11. For the purpose of effectuating the aforesaid combination and conspiracy, the defendants and co-conspirators did those things which they combined and conspired to do, including the following:

"a. Agreed from time to time upon the establishment of charges for extras in the price lists for carbon steel sheets employed by the defendant corporations;

"b. Agreed from time to time upon changes in charges for extras in the price lists for carbon steel sheets employed by the defendant corporations;

"c. Agreed from time to time upon the elimination of certain extras in the price lists for carbon steel sheets employed by the defendant corporations;

"d. Agreed from time to time upon the interpretation of, and the application of, extras for carbon steel sheets;

"e. Agreed from time to time upon uniform standards, specifications and charges for carbon steel sheet products being produced, and for new carbon steel sheet products to be

---

1. 26 Stat. 209 (1890), as amended, 15 U.S.C. § 1 (1958).

introduced in the market by defendants;

"f. Held meetings, at which no minutes were kept, at the Biltmore and Sheraton East hotels in New York, New York, among other places, in order to accomplish many of the things which the defendants and co-conspirators combined and conspired to do as set forth in subparagraphs a. through e. above."

The defendants' attack centers upon paragraphs 9 and 10, which they refer to as the charging paragraphs. The essence of their position is that the allegations of these two paragraphs merely charge that from 1955 to 1961 the defendants engaged in a conspiracy to eliminate price competition in the sale of carbon sheets, but omit the essential factual terms of the alleged agreement—accordingly, the indictment is invalid because (1) it fails to inform them adequately of the charge to enable proper preparation for trial; (2) it does not provide sufficient information upon which a judgment may be pleaded in bar of a subsequent charge for the same offense, and (3) it does not enable a court to pass upon and decide the sufficiency of the charge as a matter of law.[2]

The defendants reject any reference to paragraph 11 to support the validity of the indictment. They contend that its allegations set forth overt acts to effectuate the alleged conspiratorial agreement, and as such these may not be resorted to in order to validate paragraphs 9 and 10 which purport to charge the illegal agreement. The substance of their contention is that subdivisions a. to e. of paragraph 11—that the conspirators "from time to time agreed," as set forth therein—are not the terms of the conspiracy charged in paragraph 10, but only allege action taken in furtherance of the conspiracy. The Government reads paragraph 11 differently. Its position is that it must be read together with paragraphs 9 and 10, particularly since it is subsumed under the description "OFFENSE CHARGED," and so read, its allegations set forth not only the manner and means whereby the conspiracy was effectuated, but that they were part of and included the terms of the conspiracy or illegal agreement described in paragraph 10, and accordingly clearly charge a "per se" violation of section 1 of the Sherman Act.

To set the matter in proper focus, it is desirable to consider what the charge is under section 1. What is condemned is a conspiracy, combination or contract in restraint of interstate trade or commerce. The crime is the illicit agreement. An overt act to carry the conspiracy into effect is not an essential element of the crime.[3] In this respect a section 1 combination or conspiracy is on a common law basis and is unlike a conspiracy under the general conspiracy statute,[4] which by its terms requires as an essential element the commission by a conspirator of at least one overt act to effect the object of the conspiracy.[5]

Since an overt act is not an essential ingredient of a Sherman Act violation, there is no reason to confine paragraph 11 to allegations of overt acts as defendants urge; on the contrary, since an overt act is not required, this gives support to the Government's view that the portion thereof which alleges that

2. See Russell v. United States, 369 U.S. 749, 765, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); United States v. Debrow, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92 (1953); Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932); Wong Tai v. United States, 273 U.S. 77, 80–81, 47 S.Ct. 300, 71 L.Ed. 545 (1927).

3. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 224–225 n. 59, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); United States v. Trenton Potteries Co., 273 U.S. 392, 402, 47 S.Ct. 377, 71 L.Ed. 700 (1927); Nash v. United States, 229 U.S. 373, 378, 33 S.Ct. 780, 57 L.Ed. 1232 (1913); United States v. Buchalter, 88 F.2d 625 (2d Cir.), cert. denied sub nom. Shapiro v. United States, 301 U.S. 708, 57 S.Ct. 942, 81 L.Ed. 1362 (1937).

4. 18 U.S.C. § 371 (1958).

5. United States v. Falcone, 311 U.S. 205, 210, 61 S.Ct. 204, 85 L.Ed. 128 (1940).

"for the purpose of effectuating the aforesaid combination and conspiracy the defendants and conspirators did those things which they combined and conspired to do, including * * * [subdivisions a. to e.]," charges that what they did was a part of the conspiratorial "agreement, understanding and concert of action" referred to in paragraph 10. The fact that the means and methods whereby the purpose of a conspiracy was to be carried out may also be descriptive of overt acts performed by the conspirators does not detract from their force as allegations of means and methods.[6]

■ The defendants' further attack upon the indictment rests upon its dismemberment by reading paragraphs in isolation and disregarding the relationship of paragraph 11 to paragraphs 9 and 10. However, the indictment must be read as a whole and not in truncated form.[7] Fairly read as an integrated document, the indictment charges a conspiracy which consisted of a continuing agreement or concert of action to eliminate price competition in the sale of carbon sheets for the period from 1955 to at least 1961, the terms of which included (1) the establishment of charges for extras in the price lists for carbon steel sheets employed by the defendant corporations; (2) changes in charges for extras in the price lists for carbon steel sheets employed by the defendant corporations; (3) the elimination of certain extras in the price lists for carbon steel sheets employed by the defendant corporations; (4) the interpretation of and the application of extras for carbon steel sheets; and (5) uniform standards, specifications and charges for carbon steel sheets being produced and for new carbon steel sheets to be introduced in the market by the defendants; that the conspirators from time to time within said period did those very things that they had conspired to do under their continuing agreement; that the effect of the conspiracy has unreasonably restrained interstate trade and commerce in that (a) prices of carbon steel sheets have been fixed at arbitrary noncompetitive levels, and (b) purchasers of carbon steel sheets have been deprived of the benefit of free and open competition in the sale of such products.

■ Since, under the Sherman Act, any combination "which tampers with price structures is engaged in an unlawful activity,"[8] and one formed for "the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate * * * commerce is illegal *per se*,"[9] the indictment fairly sets forth the essential ingredients of the crime charged. The indictment here informs the defendants as to the time, place, manner, means and effect of the alleged violation.[10] While it is true that precise dates and details are not specified, these are matters which are subject to a proper application for a bill of particulars.[11] Moreover, since the gist of a conspiracy charge is the agreement itself, the indictment is not required to contain the specificity as in the instance of a substantive offense. This is especially so since a conspiracy may be, and usually is, established by a course of dealing or a pattern of conduct and the

6. United States v. Waltham Watch Co., 47 F.Supp. 524, 530 (S.D.N.Y.1942).

7. United States v. Armour & Co., 137 F.2d 269, 270 (10th Cir. 1943); United States v. Minneapolis Elec. Contractors Ass'n, 99 F.Supp. 75, 78 (D.Minn.1951), appeal dismissed, 207 F.2d 782 (8th Cir. 1953).

8. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 221, 60 S.Ct. 811, 843 (1940).

9. Id. at 223, 60 S.Ct. at 844.

10. Cf. United States v. A. P. Woodson Co., 198 F.Supp. 579 (D.D.C.1961); United States v. Greater Kansas City Retail Coal Merchants' Ass'n, 85 F.Supp. 503 (W.D.Mo.1949).

11. Glasser v. United States, 315 U.S. 60, 66, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

reasonable inferences to be drawn therefrom.[12]

The defendants themselves acknowledge, somewhat grudgingly, that within the framework of the present indictment sufficient is alleged to support a valid indictment, but only if it is recast in different form. Thus, they say that if the indictment were redrawn so that at the end of paragraph 10 an additional clause was included, to wit, "the substantial terms of which were that they," followed by the present allegation 11a., "agreed from time to time upon the establishment of charges for extras in the price lists for carbon steel sheets employed by the defendant conspirators," and the remaining allegations of b. through e., in that event, the defendants would know that they were being charged with agreeing on extras, and accordingly would have some indication of what they had to meet at trial.[13] In other words, they suggest that if paragraphs 10 and 11 were consolidated in the manner suggested, the indictment would be valid, whereas separately numbered, and as at present, it is invalid. This suggests a throwback to the rigidity of antiquated and archaic rules of old common law criminal pleading. The fact that paragraph 10 failed, with reference to paragraph 11, to include such language as "by the means hereinafter set forth,"[14] or

that paragraph 11 omitted "as hereinbefore alleged,"[15] does not foreclose considering the paragraphs in relationship to one another. Indictments are now passed upon on the basis of practical as opposed to technical consideration.[16] No doubt the indictment could have been drawn more artfully or precisely, but that is not the test of the validity of an indictment.[17]

The defendants make the further contention that even if it be held that paragraphs 9, 10 and 11, considered together, set forth the substantial terms of the conspiracy, the indictment is still defective because the word "including" in paragraph 11 renders it indefinite. However, while the use of the word "including" suggests there may be other terms, this would not subject the indictment to dismissal. Defendants are in a position either to move for particulars as to any other terms, or else to strike the word "including."[18]

The Court is satisfied that the indictment sufficiently apprises the defendants of the charge against them to enable adequate preparation for trial and defense and to plead any judgment in bar of future prosecution upon the same charges.

The motion to dismiss the indictment is denied.

---

12. American Tobacco Co. v. United States, 328 U.S. 781, 809–810, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 75–76, 31 S.Ct. 502, 55 L.Ed. 619 (1911), Mercer v. United States, 61 F.2d 97 (3d Cir. 1932); United States v. Kahaner, 204 F.Supp. 921 (S.D.N.Y.1962).

13. The defendants apparently prefer the form of indictment used in United States v. Northeast Texas Chapter, 181 F.2d 30 (5th Cir. 1950).

14. As in United States v. Waltham Watch Co., 47 F.Supp. 524 (S.D.N.Y.1942).

15. As in United States v. Armour & Co., 137 F.2d 269 (10th Cir. 1943).

16. Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932); United States v. Achtner, 144 F.2d 49, 51 (2d Cir. 1947); United States v. American Medical Ass'n, 72 App.D.C. 12, 110 F.2d 703, 715, cert. denied, 310 U.S. 644, 60 S.Ct. 1096, 84 L.Ed. 1411 (1940).

17. United States v. Debrow, 346 U.S. 374, 378, 74 S.Ct. 113, 98 L.Ed. 92 (1953); Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417 (1932); United States v. Varlack, 225 F.2d 665, 670 (2d Cir. 1955); United States v. Pope, 189 F. Supp. 12, 16–17 (S.D.N.Y.1960).

18. Cf. United States v. Mayo, 230 F.Supp. 85 (S.D.N.Y.1964); United States v. Pope, 189 F.Supp. 12, 25–26 (S.D.N.Y. 1960).