## UNITED STATES v. KING et al.

(District Court, D. Massachusetts. October 23, 1915.)

No. 953.

1. MONOPOLIES ⊙⇒31—CRIMINAL PROSECUTIONS—SUFFICIENCY OF INDICTMENT.

An indictment alleged that defendants entered into a conspiracy that they should appoint an executive committee, that the executive committee should constitute a listing committee, that the listing committee should cause a list of undesirable persons to be prepared and published, and that defendants should thereafter refuse to have any further business dealings with such blacklisted persons, that the defendants did appoint a listing committee, that in pursuance of the conspiracy and to effect its object the committee blacklisted a person named, and defendants refused to deal with him, thereby restraining him from carrying on interstate trade. *Held*, that this sufficiently alleged that the conspiracy was actually entered upon and engaged in, and the use of the word "should" did not render it insufficient in this respect.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 20; Dec. Dig. ⊙⇒31.]

2. INDICTMENT AND INFORMATION ⊙⇒125—MONOPOLIES—CRIMINAL PROSECUTIONS—DUPLICITY.

Such indictment was not bad for duplicity, as charging both a conspiracy in restraint of trade and an actual restraint of trade, as the overt acts described were alleged in support of the charge of conspiracy, and not as separate crimes.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 334–400; Dec. Dig. ⊙⇒125.]

3. INDICTMENT AND INFORMATION ⊙⇒86—REQUISITES AND SUFFICIENCY—ALLEGATIONS AS TO VENUE.

An indictment for a conspiracy in restraint of trade alleged that at Boston, in the district of Massachusetts, the defendants therein named

---

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

unlawfully, etc., entered into a conspiracy therein described, and that, in pursuance of such conspiracy and to effect its object, they did certain acts. *Held* that this sufficiently alleged a crime committed by each of the defendants within the district of Massachusetts.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 230–243; Dec. Dig. ☜86.]

**4. MONOPOLIES ☜31—CRIMINAL PROSECUTIONS—SUFFICIENCY OF INDICTMENT.**
Interstate shippers of an especially desirable variety of potato formed a shippers' association, the members of which made 75 per cent. of all interstate shipments of such potatoes. The association acted through a committee, which was authorized to determine whether any person producing, receiving, or dealing in such potatoes was undesirable. Persons adjudged undesirable were put on a black list, which was circulated among the members, who were forbidden under a penalty from having any business dealings with blacklisted persons. The black list was also circulated among nonmembers, dealing in potatoes as buyers, sellers, commission merchants, or otherwise, and such nonmembers were notified that, unless they ceased dealing with blacklisted persons they would be blacklisted, and members of the association would no longer deal with them. An indictment for a conspiracy in restraint of trade did not state the object of the association or the reasons for which persons were blacklisted. *Held*, that on demurrer it must be assumed that these reasons were legitimate, and hence the indictment did not show that defendants were not within their rights in forming the association, blacklisting persons, and agreeing that the members would not deal with such blacklisted persons, but that in going outside its own membership and attempting to coerce nonmembers from dealing with those blacklisted it was an illegal conspiracy.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 20; Dec. Dig. ☜31.]

**5. MONOPOLIES ☜17 — COMBINATIONS PROHIBITED — BOYCOTTS — SECONDARY BOYCOTTS.**
Where it was intended to restrain the trade of the blacklisted persons, the "secondary boycott," or attempt of the members of the association to coerce nonmembers into refraining from dealing with blacklisted persons, was illegal under the Sherman Act (Act July 2, 1890, c. 647, 26 Stat. 209 [Comp. St. 1913, §§ 8820–8830]), regardless of defendants' purpose or motive as no purpose or motive could make such action justifiable or such restraint legal.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 13; Dec. Dig. ☜17.]

**6. MONOPOLIES ☜31—CRIMINAL PROSECUTIONS—SUFFICIENCY OF INDICTMENT.**
Where an indictment against the members of a potato shippers' association, the members of which controlled 75 per cent. of an especially desirable variety of potatoes, for conspiracy in restraint of trade, alleged that persons engaged in buying, selling, or dealing in such potatoes could not obtain sufficient quantities to meet their legitimate demands unless potatoes were supplied to them by such members, it sufficiently appeared that it was intended to restrain the trade of persons blacklisted by the association, as the refusal to do business with them would restrain their trade, and the intent must be presumed from the act itself.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 20; Dec. Dig. ☜31.]

Carl C. King and others were indicted for a conspiracy in restraint of trade. On demurrer to the indictment. Demurrer overruled.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

George W. Anderson, U. S. Atty., and Leo A. Rogers, Asst. U. S. Atty., both of Boston, Mass.

Herbert Parker, of Boston, Mass., for defendants.

MORTON, District Judge. This is an indictment for a conspiracy in restraint of trade under the Sherman Act. The defendants have demurred, and have assigned many causes of demurrer, which fall into two groups, viz. those which relate to the language of the indictment, and those which relate to its subject-matter.

[1] As to the objections based on the alleged insufficiency or inaccuracy of the language:

The defendants contend that the indictment does not allege that a conspiracy was actually entered upon and engaged in. This argument is based principally upon the use of the word "should" in that part of the indictment which undertakes to describe the conspiracy. It alleges that the defendants unlawfully and knowingly entered into a conspiracy in unreasonable restraint of trade, which conspiracy was, in substance, that the defendants "should appoint" an executive committee, that such executive committee "should constitute" a listing committee, that said listing committee "should cause" a list of undesirable receivers to be prepared and published, that all the members of the association "should thereafter refuse to have any further business dealings" with the blacklisted persons, etc. The indictment then goes on to allege that the defendants constituted said listing committee, and, "in pursuance of said conspiracy and to effect the object thereof," did blacklist one McLatchy, and that the remaining members of the association refused to deal with him, thereby restraining him from carrying on interstate trade.

It is thus explicitly alleged that the defendants engaged in a conspiracy that they should do certain things, and that they did certain acts in carrying it out. An agreement is not infrequently stated in the form, "It was agreed that the parties should do," etc. Such language means, as I understand it, that the agreement was actually made. The indictment is to be taken as a whole, and in the fair meaning of the words used; so considered, it sufficiently charges that the defendants entered into the conspiracy which is described. To apply the test suggested in the defendants' brief, it seems to me plain from the indictment "that the combination or agreement between the alleged conspirators had developed from the mere contemplation of a tentative plan into a definite, initiated, operative course of action."

[2] The defendants also contend, rather inconsistently, perhaps, that the indictment is bad for duplicity, because it charges both a conspiracy in restraint of trade and an actual restraint of trade. It is, however, clear that what the indictment charges is a conspiracy, and that the overt acts described in it are alleged in support of that charge, and not as separate crimes.

[3] In the case of Doyle, it is further argued that the indictment does not allege any criminal act committed by him in this district. It does, however, explicitly state that, "at Boston, in said district of Massachusetts, said defendants [i. e., King, Hovey, Powers, Doyle, and

Sylvester] unlawfully, knowingly, and feloniously entered into a conspiracy with each other," etc. This, in connection with the rest of the indictment, sufficiently alleges a crime committed by Doyle in this district.

Coming to the substance of the charge, the indictment, as I construe it, describes the following business situation:

[4] An especially desirable variety of potato is grown in Maine, which is well known under the name of Aroostook county potatoes. There is an extensive interstate trade in them. Persons interested in that trade formed an association called the Aroostook Potato Shippers' Association. Seventy-five per cent. of all interstate shipments from Maine of Aroostook county potatoes were made by members of this association. It acted through a committee. The committee was authorized to determine whether any given person who carried on the business of producing, receiving, or dealing in such potatoes was "undesirable." The basis upon which this determination was to be made does not appear. The persons adjudged "undesirable" were thereupon put on a black list. This black·list was circulated among the members of the association, and they were forbidden by its by-laws, under a penalty, from having any business dealings with a blacklisted person. The black list was also circulated among persons dealing in potatoes, either as buyers, sellers, commission merchants, or otherwise, who were not members of the association; and such persons were notified that, unless they ceased dealing with the blacklisted person, members of the association would not longer deal with them, and they themselves would be blacklisted. Is such an association legal under the Sherman Act?

Persons have a right to associate for the purpose of advancing their own interests by discriminating against other persons, if such discrimination is based upon proper and legal grounds, e. g., failure to pay bills due to members of the association (Brewster v. Miller, 101 Ky. 368, 41 S. W. 301, 38 L. R. A. 505), and is not merely coercive and arbitrary, as in Martell v. White, 185 Mass. 255, 69 N. E. 1085, 64 L. R. A. 260, 102 Am. St. Rep. 341; nor for the purpose of restraining interstate trade, as in Eastern States Lumber Association v. U. S., 234 U. S. 600, 34 Sup. Ct. 951, 58 L. Ed. 1490, L. R. A. 1915A, 788.

The object of the Aroostook Association is nowhere described in the indictment; and there is no allegation of any purpose or intent by its members or by the defendants to restrain trade. The reasons for which it blacklisted persons are not stated; they do not appear to have related to the sale or purchase of commodities or to interstate commerce; they may have been, and on this demurrer must be assumed to have been, legitimate. It does not appear that the defendants were not within their rights in the formation of their association, in giving its officers the right to blacklist, and in agreeing that members would not deal with blacklisted persons. Up to a certain point, the situation described is not legally different from that which arises when the executive officers of a labor union declare a strike against a certain employer to obtain shorter hours, higher wages, or some-

other legitimate end. A strike is merely an agreement by all the members of the union not to do business with that employer.

[5, 6] But the defendants' association did not confine its activities to its own members and their relations to such persons as from time to time might be placed upon its black list. It went further, and contemplated that the black list, made by its executive committee, should be circulated among nonmembers as well as members, and that outsiders should be notified that they, too, must refrain from doing business with the persons who had been blacklisted by the association, or they, too, would be blacklisted. This was referred to in argument as "a secondary boycott." If done with the intent to restrain trade with the victim and thereby to coerce him, it is exactly what was outlawed by the Supreme Court in the Danbury Hatters' Case, Lawlor v. Loewe, 235 U. S. 522, 35 Sup. Ct. 170, 59 L. Ed. 341. If an intent to restrain trade is apparent from the indictment, it need not be explicitly alleged. This was decided in U. S. v. Patten, 226 U. S. 525, 543, 33 Sup. Ct. 141, 57 L. Ed. 333, 44 L. R. A. (N. S.) 325. When an association controlling 75 per cent. of a certain commodity refuses to do business with any given dealer in it, its action so clearly and naturally restrains his trade that an intent to do so must, I think, be presumed from the act itself. In this case it is explicitly alleged that persons engaged in the business of buying, selling, or dealing in Aroostook county potatoes could not obtain sufficient quantities of such potatoes "to meet the legitimate demands of their several businesses unless in some part Aroostook county potatoes are supplied to them by the persons, aforesaid members of the Aroostook Potato Shippers' Association." The indictment thus alleges a conspiracy in restraint of trade of such character as to warrant an imputation of an intent to accomplish that result.

The final question is whether the restraint appears to have been unreasonable or illegal. As before stated, the indictment is wholly silent as to the grounds upon which the blacklisting was done, or the purpose of it. If a secondary boycott is ever legal, it must be assumed to have been so in this instance; but I think it never is. In Pickett v. Walsh, 192 Mass. 572, at page 588, 78 N. E. 753, at page 760 [6 L. R. A. (N. S.) 1067, 116 Am. St. Rep. 272, 7 Ann. Cas. 638], it was held that "organized labor's right of coercion and compulsion is limited to strikes against persons with whom the organization has a trade dispute"; and in Plant v. Woods, 176 Mass. 492, at page 502, 57 N. E. 1011, at page 1015 [51 L. R. A. 339, 79 Am. St. Rep. 330], it was said: "The defendants might make such lawful rules as they pleased for the regulation of their own conduct, but they had no right to force other persons to join them." See, too, Cornellier v. Haverhill Shoe Manufacturers' Association, 221 Mass. 554, 109 N. E. 643 (Supreme Judicial Court, Massachusetts, September, 1915).

Under the Sherman Act the right of combination is certainly not greater than at common law.

"In other words, the trade of the wholesaler with strangers was directly affected, not because of any supposed wrong which he had done to them, but because of the grievance of a member of one of the associations, who had re-

ported a wrong to himself, which grievance, when brought to the attention of others, it was hoped would deter them from dealing with the offending party. This practice takes the case out of those normal and usual agreements in aid of trade and commerce which may be found not to be within the act, and puts it within the prohibited class of·undue and unreasonable restraints, such as was the particular subject of condemnation in Loewe v. Lawlor, supra.

"The argument that the course pursued is necessary to the protection of the retail trade and promotive of the public welfare in providing retail facilities is answered by the fact that Congress, with the right to control the field of interstate commerce, has so legislated as to prevent resort to practices which unduly restrain competition or unduly obstruct the free flow of such commerce, and private choice of means must yield to the national authority thus exerted. Addyston Pipe Co. v. United States, 175 U. S. 211, 241, 242 [20 Sup. Ct. 96, 44 L. Ed. 136]."

Day, J., Eastern States Lumber Association v. U. S., 234 U. S. 600, at 612, 34 Sup. Ct. 951, at 954 [58 L. Ed. 1490, L. R. A. 1915A, 788].

The association may have had the right to blacklist persons for legal and sufficient causes and objects, and to compel its members to refrain from dealing with them. But it had no right to endeavor to enforce its judgments by insisting that outsiders also obey them or else be blacklisted. No purpose or motive could make such action justifiable or such restraint legal. It follows that the restraint of trade described in the indictment was of an illegal character

Demurrer overruled.