**UNITED STATES v. ST. JOSEPH STOCK YARDS CO. et al.**

**No. 3114.**

District Court, W. D. Missouri, St. Joseph Division.

April 3, 1942.

32

St. Joseph Stock Yards Company and others were indicted for violating the Sherman Anti-Trust Act. On defendants' demurrers to the indictment.

Demurrers overruled in accordance with opinion.

Thomas M. Daly, Sp. Asst. to Atty. Gen., of Chicago, Ill., and James C. Wilson, Sp. Asst. to Atty. Gen., of Washington, D. C., for plaintiff.

John J. Kelly, of Chicago, Ill., and H. Templeton Brown, of St. Joseph, Mo., for defendant St. Joseph Stock Yards Co.

R. E. Culver, of St. Joseph, Mo., for St. Joseph Live Stock Exchange, St. Joseph Joint Marketing Committee, and Hog Yards Sub-Committee of St. Joseph Joint Marketing Committee.

John Potts Barnes, of Chicago, Ill., and Paul V. Barnett and Henry Ess, both of Kansas City, Mo., for Armour & Co.

C. B. Shaw, of Chicago, Ill., and E. R. Morrison and James E. Nugent, both of Kansas City, Mo., for Swift & Co.

OTIS, District Judge.

We suppose the feeling is a natural one that the specialists in the anti-trust division of the Department of Justice ought to be able to draw an indictment good against demurrers. They have had much experience—almost a plethora of experience since the ascendancy of Honorable Thurman Arnold—and they are learned in the law. But this indictment has been attacked by lawyers of such outstanding capacity and character that the indictment must be studied carefully in the light of their criticism.

The indictment is bottomed on Section 1 of the Sherman Act, Title 15 U.S.C.A. § 1, which reads: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal * * *. Every person who shall make any contract or engage in any combination or conspiracy declared by [this section] to be illegal shall be deemed guilty of a misdemeanor * * *."

The contention of defendants presented in their demurrers and urged in oral and written arguments is that the indictment does not charge the offense denounced by the statute. We must therefore lay the indictment, reduced to briefest compass, alongside the statute. We have—From paragraph 29 of the Indictment: " * * * immediately preceding the date of the return of this indictment the defendants * * * have engaged knowingly and continuously in a conspiracy to fix prices for the sale on the St. Joseph livestock market of hogs shipped from points in Missouri and other states to the said market for sale thereon * * * in restraint of interstate trade and commerce. * * *" From paragraph 30 of the Indictment: "The aforesaid conspiracy has consisted in a continuing agreement and concert of action among the defendants, the substantial terms of which have been that the defendants Armour and Swift purchase equal numbers of hogs each year and each month in the aforesaid livestock market; that the defendants at the opening of the aforesaid market each day appropriate for the defendant Swift a small portion of the hog receipts to be bought at prices to be determined at the close of the said market; that the defendant Armour refuse to offer bids on the hogs so appropriated for the defendant Swift; that the defendant Exchange refuse to accept any bids on the hogs so appropriated for the defendant Swift; that the defendant Swift buy the hogs so appropriated at a factitious price; that the defendants Armour and Swift purchase hogs each Saturday on the aforesaid livestock market at the prices paid by the said defendants on the preceding Friday on the aforesaid market; that the defendant Exchange sells hogs each Saturday on the aforesaid livestock market at the prices paid by the defendants Armour and Swift on the preceding Friday; that the defendants announce by radio that Saturday's hog prices on the aforesaid livestock market would be the same as the preceding Friday's hog prices on the said market; that the defendants induce meat packer buyers, independent buyers, and producers to refrain from buying and selling hogs in the St. Joseph trade territory except on the aforesaid livestock market; that the defendants Swift and Armour from time to time meet with one another and with members of the defendant Exchange and arbitrarily change the terms of hog sales previously made on the St. Joseph livestock market by

substituting other prices for those agreed upon between the buyer and seller at the time of sale on the aforesaid livestock market." From paragraph 31 of the Indictment: "* * * the defendants, by agreement and concerted action, have done the things which * * * they conspired to do. * * *

### What Defendants Say

The essence of the argument for defendants is:

(1) It is insufficient to attempt to charge the offense aimed at in the statute in the words of the statue alone;

(2) If paragraph 29, standing by itself, might be sufficient to charge an offense (which defendants deny, but not vigorously), it does not stand by itself, its general allegation is particularized in paragraph 30, and the question is: Does the general allegation in 29 as particularized and limited by particulars charge a crime?

(3) The general allegation in 29, as limited in 30, does not charge a crime, whether any particular alone is considered or all particulars are considered.

For the purposes of this memorandum only, we accept at once steps 1 and 2 of defendants' argument, pointing out, however, that paragraph 29 does not undertake to charge an offense in the words of the statute alone and that while paragraph 30 does particularize paragraph 29, nevertheless paragraph 29 enters into each of the particulars of paragraph 30. And so we are brought to a consideration of step 3 in the argument.

We endeavor to simplify the problem by again setting out in haec verba portions of paragraphs 29, 30 and 31 of the indictment, as follows: "* * * immediately preceding the return of this indictment the defendants have engaged* knowingly . * * * in a conspiracy to fix prices for the sale on the St. Joseph livestock market of hogs * * * which conspiracy has been in restraint of * * * interstate trade and commerce * * * [and] which conspiracy has consisted in [an] agreement * * * that the defendants Armour and Swift purchase hogs each Saturday on the aforesaid livestock market at the prices paid by the said defendants on the preceding Friday on the aforesaid market; * * * the defendants * * * have done the things which * * * they conspired to do. * * *"

Now it is too obvious to require argument that this language charges with definiteness and particularity the offense denounced by the statute unless it must be declared as a matter of law that an agreement that Armour and Swift will purchase hogs on Saturday at the prices paid by Armour and Swift on Friday will not and cannot have the effect of restraining interstate commerce.

■ We must not rob the allegations set out of their reasonable significance as defendants' learned counsel, we fear, undertake to do when they say: "It is not alleged that either packer promised to pay the price on Saturday.which his competitor had paid on Friday. It is not alleged that both agreed to pay on Saturday either the highest or the lowest price bid by either on Friday." The allegation is that Armour and Swift agreed to purchase on Saturday "at the prices paid by the said defendants" on Friday. It may be judicially noticed, we suppose, that there is scarcely a hair's difference between the prices paid per pound by Armour and Swift on any Friday for hogs of the same quality and class at a given market. The alleged agreement, if made, was not so vague as to be meaningless and worthless. The agreement, as alleged, included, for example, an agreement that if Armour and Swift paid 10 cents a pound on Friday for hogs of a given class and quality they would pay 10 cents a pound on Saturday, no more and no less, no matter what happened in the interim that in the natural course would affect prices.

■ But, argue counsel, such an agreement to fix prices for only one day in the week, if that day is Saturday, does not restrain commerce. Counsel cite Board of Trade of City of Chicago v. United States, 246 U.S. 231, 38 S.Ct. 242, 244, 62 L.Ed. 683, Ann.Cas.1918D, 1207. But the cited case, in our judgment, does not support the argument. The facts in the case were that the United States had petitioned for injunction against the enforcement by the Chicago Board of Trade of a rule requiring members "to desist from further price-making after the close of the Call [the Call was after 1:30 p. m. and lasted about half an hour] until 9:30 a. m. the next business day." The holding of the Court was, not that the petition did not state grounds for the relief prayed, but that the government failed to

---

* Some point was made at the argument by one of counsel for defendants bottomed on the use of the word "engaged." Obviously, however, the use of that word was suggested by the terminology of the statute.

**34**

prove the case pleaded. The government, the court said, "made no attempt to show that the rule was designed to or that it had the effect of limiting the amount of grain shipped to Chicago * * * or of raising or depressing prices * * * or that it resulted in hardship to any one." But we are dealing here, not with the question whether the crime charged has been proved, but with the question: Has a crime been charged? Here the demurrer admits that the agreement alleged was intended and designed to fix prices in restraint of interstate commerce and trade" and that the intention was accomplished. We think, moreover, that the "rule" discussed in the Board of Trade case was clearly no such restraint of trade as the agreement charged in the indictment here notwithstanding certain seeming parallelisms defendants have pointed out.

We have discussed only one of the particulars alleged in paragraph 30. We are satisfied that several, if not all, of those particulars—and all together—when read with paragraph 29, charge a crime. We are convinced also that only one crime is charged—it is viewed in each particularization of paragraph 30 in a different aspect—and that the crime charged is the crime of conspiring to fix the prices of hogs on the St. Joseph market, so restraining interstate trade and commerce.

### A Needless Addendum

We add—what it ought to be unnecessary to add—that we are passing on the sufficiency of the indictment and that only. So much was said, however, by some of learned counsel at the argument that went to the merits that, for the benefit of interested laymen, we add the observation we just have made. It is one thing to charge a crime; whether it can be proved is the problem of another day.

### Order

All demurrers are overruled. So ordered. Exceptions allowed defendants.

If any further motions directed to the indictment are to be filed, they must be filed not later than Monday, April 13, 1942. So ordered.

Defendants who were permitted to withdraw pleas of not guilty to file demurrers need not appear for rearraignment until the day of trial. So ordered.

The case is set for trial at St. Joseph, Missouri, Monday, May 11, 1942. So ordered.