## UNITED STATES v. ARMOUR & CO. et al.
### No. 2706.

Circuit Court of Appeals, Tenth Circuit.

July 23, 1943.

· Holmes Baldridge, of Washington, D. C. (Robert C. Barnard, Sp. Asst. to the Atty. Gen., Tom C. Clark, Asst. Atty. Gen., and Charles E. Dierker, U. S. Atty., of Oklahoma City, Okl., on the brief), for appellant.

Frank G. Anderson and David I. Johnston, both of Oklahoma City, Okl. (Charles J. Faulkner, Jr., and John Potts Barnes, both of Chicago, Ill., Robert M. Rainey, and Streeter B. Flynn, both of Oklahoma City, Okl., and A. K. Gembick, of Chicago, Ill., on the brief), for appellees.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

The only question presented by this appeal is whether the indictment[1] is sufficient to state an offense in violation of Section 1

---

[1] The paragraphs necessary to consider are 17, 18 and 19. They are as follows:

"17. During a period of approximately ten years immediately preceding the date of the return of this indictment, the defendants and other persons to the Grand Jurors unknown have engaged knowingly and continuously in a conspiracy to fix prices for the sale in the Oklahoma City livestock market of hogs shipped from points in Oklahoma and other states to the said market for sale therein, which

conspiracy has been in restraint of the interstate trade and commerce described in this indictment and in violation of Section 1 of the Act of Congress of July 2, 1890, as amended (U.S.C.A., Title 15, Section 1), commonly known as the Sherman Act.

"18. It has been a part of the aforesaid conspiracy that the defendants Armour and Wilson purchase equal numbers of hogs each year and each month in the aforesaid livestock market; that the defendants Armour and Wilson, from time

of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1.[2] We note that the indictment was returned October 17, 1941, that the demurrers were not filed until March 12, 1942, that the opinion was not handed down until January 27, 1943, and that the order sustaining the demurrers was not entered until February 4, 1943. The record does not reveal the reason for this inordinate delay in disposing of a pending criminal charge.

At the outset it may be said that the indictment is not a model for clarity, nor one to be commended as an example of good pleading. But that is not what we are deciding. We inquire only to ascertain whether the indictment charges an offense with sufficient clarity to enable the defendants to properly prepare their defense, and with sufficient certainty and definiteness that the results of the trial would be an effective bar to a future proceeding on account of the same transactions.

In determining the sufficiency of the indictment, we look to its four corners and not to paragraph 17 alone, as appellees would have us do. United States v. King, D.C., 229 F. 275; United States v. American Medical Ass'n, 72 App.D.C. 12, 110 F.2d 703; Ex parte Pierce, C.C., 155 F. 663. Paragraphs 18 and 19 are as much a part of the indictment as paragraph 17, and if the three read together state an offense with such particularity as is required by law, then the indictment is good. "The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." United States v. Patten, 226 U.S. 525, 544, 33 S.Ct. 141, 145, 57 L.Ed. 333, 44 L.R.A.,N.S., 325.

The main attack levied at the indictment is that, (1) it is too vague, indefinite and uncertain, and (2) that no facts are alleged from which it can be determined that there was an unlawful agreement. In short, appellees contend that it is not sufficient to allege that certain parties conspired to restrain trade by fixing prices. Their position seems to be that an indictment must allege that the parties "agreed" to restrain trade by the means alleged, and that an indictment that does not contain the word "agree" or "agreement" is fatally defective.

We attach no such magic to the word "agreed" or "agreement." Of course, a conspiracy is the result of an unlawful agreement and without an agreement to restrain trade there can be no conspiracy, and an indictment which fails to charge such an agreement is fatally defective. But the words "agreed" or "agreement" are not without synonyms, and any words which fairly import a concerted action or a conniving together to restrain trade are sufficient to charge a conspiracy.

In Wright v. United States, 5 Cir., 108 F. 805, 810, it was said that:

"To charge that the three defendants (naming them) 'did conspire' means that they agreed together or among themselves. While other verbs may be used, the verb 'conspire' is certainly the most appropriate to charge a conspiracy. * * *

"The omission of words that would add nothing to the meaning of an indictment

---

to time, purchase particular shipments of hogs received at the aforesaid market, divide the number of hogs in each of such shipments equally between themselves, and pay identical prices for the hogs in the shipments so divided; that the defendants Armour and Wilson regulate their Saturday buying of hogs in the aforesaid market on a reciprocal basis, the one refraining from Saturday purchases when the other enters the market on that day; that the defendants Armour and Wilson purchase hogs in the Oklahoma City livestock market at a fixed differential below hog prices in the livestock market at Kansas City, Missouri; that the defendants Armour and Wilson purchase garbage-fed hogs in the Oklahoma City livestock market at a fixed discount; and that the defendants Armour and Wilson threaten to cease purchasing hogs from commission firms selling to other buyers of hogs in the Oklahoma City livestock market and in other ways obstruct and impede the lawful buying and selling liberties of such commission firms and of buyers of hogs in the aforesaid market other than Armour and Wilson.

"19. During the period of time covered by this indictment and for the purpose of forming and effectuating the aforesaid conspiracy, the defendants by agreement and concerted action have done the things which, as hereinbefore alleged, they conspired to do, and more particularly have done, among others, the following acts and things:"

[2] "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal * * *."

---

seems so clearly a defect of form only that the application of this statute is apparent."

In United States v. White, C.C., 171 F. 775, 776, the court said: "To allege that the defendants conspired is, at least, to allege that they agreed to do the matters which are set forth as the substance of their conspiracy. I do not mean to say that the mere fact that a conspiracy is alleged is sufficient to show that the conspiracy was unlawful, but that, taken at its lowest terms, to allege a conspiracy is to allege an agreement."

In United States v. Wupperman, D.C., 215 F. 135, 136, the court said: "The crime of 'conspiracy' is sufficiently charged if it be stated that two or more persons, naming them, conspired (that is, agreed together) to commit some offense against the United States * * *."

In the recent case of United States v. St. Joseph Stockyards, D.C., 44 F.Supp. 31, Judge Otis held that an indictment which charged a "conspiracy to fix prices for sale on livestock market of hogs in restraint of interstate commerce under agreement that a defendant would purchase hogs each Saturday at prices paid on preceding Friday was not demurrable as failing to charge a crime under Sherman Anti-Trust Act."

■ If to conspire is to agree, and to allege that parties conspired is to allege that they agreed, then to allege that they entered into a conspiracy is to allege that they entered into an agreement.

■ The fair and reasonable import of the language of paragraph 17 is to charge that the defendants continuously, for a period of ten years, knowingly engaged in a conspiracy (that is, in an agreement or undertaking) to fix prices of hogs in the Oklahoma City market in restraint of trade, in violation of Section 1 of the Act. Standing alone, paragraph 17 would be insufficient to charge the offense with the definiteness and clarity required by law. But we may not ignore other allegations of the indictment simply because they were not made a part of the same paragraph. Paragraphs 18 and 19 set out in detail the elements of the unlawful agreement. When these, as well as succeeding paragraphs of the indictment,

are considered together with paragraph 17, there can be no doubt as to the specific charges levied against the defendants.

It is further urged that the indictment failed to charge the individual defendants with the commission of any offense. The trial court did not specifically pass upon this point. In our opinion the contention is without merit. A detailed discussion of the reasons that lead to this conclusion would serve no useful purpose and would only unnecessarily encumber legal publications.

Reversed and remanded, with directions to reinstate the indictment and proceed to a trial of the issues.

PHILLIPS, Circuit Judge (concurring).

The gist of the offense defined in 15 U.S.C.A. § 1 is the unlawful conspiracy. It is not necessary that any act be done to effect the object of the conspiracy. The act of conspiring to restrain trade or commerce without more is made an offense. The offensive agreement or conspiracy alone, whether or not followed by efforts to carry it into effect, is a violation of the statute.[1]

It must follow that the language of the statute "engage in any * * * conspiracy" means to enter into a conspiracy, not to take part in carrying out a conspiracy. The word conspiracy has a well-defined meaning. It is a combination of two or more persons to accomplish, by concerted action, some criminal or unlawful act or to accomplish, by criminal or unlawful means, some act not in itself criminal or unlawful. It is constituted by an agreement but it is the continuing result of the agreement and not the agreement itself.[2] As used in 15 U.S.C.A. § 1, it is a combination of two or more persons to accomplish, by concerted action, restraint of trade or commerce among the several states or with foreign nations. So when the indictment alleged that the defendants engaged in a conspiracy to fix prices, on the Oklahoma City livestock market, of hogs shipped from points in Oklahoma and other states to such market for sale therein, it charged that they entered into an unlawful agreement or

[1] Nash v. United States, 229 U.S. 373, 378, 33 S.Ct. 780, 57 L.Ed. 1232; United States v. Trenton Potteries Co., 273 U.S. 392, 402, 47 S.Ct. 377, 71 L.Ed. 700, 50 A.L.R. 989; United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 225, 60 S.Ct. 811, 84 L.Ed. 1129.

[2] United States v. Kissel, 218 U.S. 601, 608, 31 S.Ct. 124, 54 L.Ed. 1168; Marino v. United States, 9 Cir., 91 F.2d 691, 694, 113 A.L.R. 975.

combination to accomplish, by concerted action, restraint of interstate commerce.

Paragraph 18 alleged the means by which the unlawful purpose was to be accomplished and supplied the particulars of the unlawful agreement.

I agree that the indictment is not well-drawn, that the allegations thereof are not as clear and specific as they should be, and that many allegations are by way of recital rather than direct and positive averments. While it should not be regarded as a model, nevertheless, I am inclined to agree that it states an offense with requisite directness, clarity, and particularity. It seems to me that there can be little doubt that the defendants are apprised that they are charged with entering into a conspiracy to restrain trade in interstate commerce in hogs at the Oklahoma City market by fixing the price thereof through concerted action and the means set forth in paragraph 18 and that they are sufficiently apprised of the charge to enable them to prepare and present their defense thereto.

Paragraph 19 alleged certain overt acts done in furtherance of the object of the conspiracy. Overt acts are not an essential element of the offense. They become important only in fixing venue.[3]

---

[3] See United States v. Trenton Potteries Co., 273 U.S. 392, 402, 403, 47 S. Ct. 377, 71 L.Ed. 700, 50 A.L.R. 989; Hyde v. United States, 225 U.S. 347, 365, 366, 32 S.Ct. 793, 56 L.Ed. 1114, Ann. Cas.1914A, 614.