**UNITED STATES v. OZARK CANNERS ASS'N, Inc., et al.**

Criminal No. 4351.

District Court, W. D. Arkansas,
Fort Smith Division.

Aug. 2, 1943.

Abner J. Swanson, Sp. Asst. to Atty. Gen., Tom C. Clark, Asst. Atty. Gen., and Clinton R. Barry, U. S. Atty., of Fort Smith, Ark., for plaintiff.

Lee Seamster, and G. T. Sullins, both of Fayetteville, Ark., Frank B. Williams, of Springfield, Mo., John P. Woods, of Fort Smith, Ark., Harvey L. Joyce, of Fayetteville, Ark., Warren M. Turner, of Springfield, Mo., Herbert E. Ritchie, of Cincinnati, Ohio, John Brizzolara, of Fort Smith, Ark., A. L. Smith, of Siloam Springs, Ark., Price Dickson, of Fayetteville, Ark., Charles E. McCoy, of Kansas City, Mo., and G. C. Hardin, of Fort Smith, Ark., for defendants.

MILLER, District Judge.

An indictment was returned in the above entitled case on January 26, 1943, charging that the defendants, Ozark Canners Association, Inc., and 193 others, corporations and individuals, conspired to restrain interstate trade and commerce in raw and canned tomatoes by fixing prices in the manner and form set forth therein and more particularly stated hereinafter. The indictment was returned to the Fayetteville Division and by the court transferred to the Fort Smith Division for further proceedings.

On April 15, 1943, all of the defendants filed a demurrer to the indictment, alleging it to be invalid upon eight grounds.

On May 15, 1943, the defendants filed their printed brief in support of the demurrer. On June 6, 1943, the government filed its printed brief in opposition to the brief of defendants and on July 9, 1943, the defendants filed their printed brief in reply.

The questions presented by the demurrer have been ably briefed and argued by learned counsel for both plaintiff and defendants. Learned counsel for defendants with commendable skill and zeal have consolidated the eight grounds of attack set forth in the demurrer into four and contend that the indictment is invalid for the following reasons: (1) It is duplicitous; (2) it fails to show jurisdiction or venue; (3) it is too vague, indefinite and uncertain, and (4) it fails to state facts sufficient to charge a crime against any of the defendants.

These contentions of defendants are discussed and determined in the order named.

(1) The defendants' first contention on their brief is "that included in this one indictment and in a single count thereof, there is more than one conspiracy; or at least a conspiracy to do more than one totally unrelated act."

█ It is not controverted that two separate offenses cannot be included in one count of an indictment.

Are two offenses stated in the indictment?

Paragraph 180 reads: "For many years including the three years immediately preceding the return of the indictment, the defendants and other persons to the grand jurors unknown, well knowing all the foregoing facts, have engaged knowingly and continuously in part, within the Western District of Arkansas, Fayetteville Division, in a conspiracy to fix, maintain, stabilize and depress the prices to be paid by canners to growers for raw tomatoes grown in the State of Arkansas, Missouri, Oklahoma and Kansas and purchased by defendants for the purpose of canning and resale in interstate trade and commerce; and to fix, maintain and stabilize at artificial and noncompetitive levels the prices to be charged for canned tomatoes processed and sold by them in interstate trade and commerce, which conspiracy has been in restraint of the interstate trade and commerce described in this indictment and in violation of Section 1 of the Act of Congress of July 2, 1890, as amended (U.S.C.A. Title 15, Sec. 1), commonly known as the Sherman Act."

Paragraph 181 states: "The aforesaid conspiracy has consisted in a continuing agreement and concert of action among defendants, the substantial terms of which have been that * * *."

The terms of the agreement and concert of action are set forth in the present tense in subsections "a" to "g", both inclusive of paragraph 181. These allegations clearly disclose the agreement and concerted action of the defendants, and in paragraph 182 it is alleged "the defendants by agreement and concerted action have done the things, which as hereinbefore alleged, they conspired to do."

Paragraph 184 alleges and sets forth the places of meeting in the Fayetteville Division of the Western District of Arkansas

where the alleged conspiracy was formed and carried out.

The last and final paragraph, 185, is as follows: "And so the grand jurors aforesaid, upon their oaths aforesaid, do find and present that the defendants named herein, at the times and places and in the manner and form aforesaid, unlawfully have entered into and engaged in the conspiracy described herein, in restraint of the trade and commerce in raw and canned tomatoes among the several states * * *."

The preceding paragraphs, 1 to 179, both inclusive, merely allege the time covered by the indictment; the definitions of certain terms and words used; the identification of the 194 defendants, corporate and natural, and the nature and historical facts of the trade and commerce involved, similar to the statement of practices of the defendants as set forth on pages 10 and 11 of their brief.

The defendants argue that the indictment charges two separate conspiracies, one, the conspiracy by all the defendants, and executed by the "canner" defendants, that the interstate trade in raw tomatoes be restrained by depressing the price and fixing it at artificial and noncompetitive levels. Two, the conspiracy alleged by all the defendants and executed by the "Spot Holders" defendants, that the interstate trade in processed and canned tomatoes be restrained by raising the price of canned goods to artificial levels.

■ The statute, 15 U.S.C.A. § 1, makes the act of conspiring to restrain trade or commerce an offense. The gist of the offense is the unlawful conspiring and it is not necessary that any act be done in furtherance of the object of the conspiracy.

■ Conspiracy as generally defined and understood is a combination of two or more persons to accomplish by concerted action, some criminal or unlawful act, or to accomplish by criminal or unlawful means some act not in itself criminal or unlawful. The conspiracy is evidenced by the agreement, but it is the result of the agreement, rather than the agreement itself, just as a partnership, although constituted by a contract, is not the contract but is a result of it. United States v. Kissel, 218 U.S. 601, 31 S.Ct. 124, 54 L.Ed. 1168.

The offense denounced by the statute, supra, is the combination of two or more persons to accomplish by concerted action, restraint of trade or commerce. The indictment here under consideration alleges that the defendants engaged "in a conspiracy to fix, maintain, stabilize and depress the prices to be paid by canners to growers for raw tomatoes * * * and to fix, maintain and stabilize at artificial and noncompetitive levels the prices, to be charged for canned tomatoes * * * sold by them in interstate trade and commerce, which conspiracy has been in restraint of the interstate trade and commerce * * *."

■ The court must examine the indictment as a whole. The relationship between all the various paragraphs must be borne in mind. "The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." United States v. Patten, 226 U.S. 525, 544, 33 S.Ct. 141, 145, 57 L.Ed. 333, 44 L.R.A., N.S., 325.

■ Considering the indictment as a whole, it is obvious that it charges a continuous conspiracy or unlawful agreement during the time mentioned therein in restraint of trade and commerce in raw and canned tomatoes. "The fact that the conspiracy was to do two or more things, or to commit two or more offenses, does not make the count duplicitous." Foreman v. United States, 8 Cir., 28 F.2d 768.

The conspiracy alone, that is, the offensive agreement, is the violation charged. It is not necessary that the conspiracy be followed by attempts to carry it into effect. Nash v. United States, 229 U.S. 373, 378, 33 S.Ct. 780, 57 L.Ed. 1232; United States v. Trenton Potteries Co., 273 U.S. 392, 393, 402, 47 S.Ct. 377, 71 L.Ed. 700, 50 A.L.R. 989; United States v. Socony-Vacuum Co. 310 U.S. 150, 225, 60 S.Ct. 811, 84 L.Ed. 1129 ; United States v. Armour & Co. et al., 10 Cir., 137 F.2d 269, decided July 23, 1943.

The fact that the defendants are charged with conspiring to unlawfully fix the price of raw and canned tomatoes in restraint of trade and commerce does not make the indictment duplicitous. Only one offense is charged. Only one conspiracy was entered into and it is immaterial that a plurality of objects were sought to be attained. Stewart v. United States, 5 Cir., 131 F.2d 624; United States v. Manton et al., 2 Cir., 107 F.2d 834; American Medical Association v. United States, 317 U.S. 519, 63 S.Ct. 326, 87 L.Ed. ——; United States v. Swift et al.,

D.C. N.D. Ill. E.D., 188 F. 92. In Braverman v. United States, 317 U.S. 49, 54, 63 S. Ct. 99, 102, 87 L.Ed. ——, it is said: "The allegations in a single count of a conspiracy to commit several crimes is not duplicitous, for 'The conspiracy is the crime, and that is one, however diverse its objects'. Frohwerk v. United States, 249 U.S. 204, 210, 39 S.Ct. 249, 252, 63 L.Ed. 561; Ford v. United States, 273 U.S. 593, 602, 47 S.Ct. 531, 534, 71 L.Ed. 793; United States v. Manton et al., [supra]."

It is apparent, when this indictment is considered as a whole, that one offense and only one is charged. In event of a conviction only one punishment could be imposed and that is the punishment for conspiracy under 15 U.S.C.A. § 1.

The indictment is not duplicitous.

■ (2) The defendants' second contention on their brief is that the indictment fails to show jurisdiction and venue. In support of this contention the defendants cite the case of United States v. Socony-Vacuum Oil Co., Inc., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129. This case does not sustain defendants' contention when considered with the allegations of paragraph 184 of the indictment. There the charge is that the defendants formed and carried out in the Western District of Arkansas, Fayetteville Division, the conspiracy charged. The place and date of several meetings are alleged. United States v. Socony-Vacuum Oil Co., Inc., supra; United States v. Trenton Potteries Co. et al., 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700, 50 A.L.R. 989.

In subsections (a) and (b) of paragraph 184, it is alleged that contracts were negotiated and performed for the purchase by defendant canners of raw tomatoes at prices fixed by agreement and that meetings were held by defendants within the territorial jurisdiction of the court; that at such meetings prices to be charged by defendants for canned tomatoes were agreed upon.

It is not alleged that all the defendants participated in the meetings or that all the defendants negotiated and executed the contracts. Certainly these were acts done as a result of the agreement and even if such acts within themselves were not criminal and were not participated in by all the defendants, still they are sufficient to fix the jurisdiction and venue. United States v. Rabinowich, 238 U.S. 78, 86, 35 S.Ct. 682, 59 L.Ed. 1211; Pierce et al., v.

United States, 252 U.S. 239, 244, 40 S.Ct. 205, 64 L.Ed. 542.

(3) The third contention is that the indictment is too vague, indefinite and uncertain.

■ In Smith v. United States, 8 Cir., 83 F.2d 631, 637, the rule is stated as follows: "In general, an indictment for a statutory offense need only charge a defendant with acts in the substantial words of the statute sufficient to apprise him of the nature of the accusation; and, if it charges all the essential elements and ingredients of the offense, it is good as against a general demurrer."

In Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861, it is said: "The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction'. Cochran & Sayre v. United States, 157 U.S. 286, 290, 15 S.Ct. 628, 630, 39 L.Ed. 704; Rosen v. United States, 161 U.S. 29, 34, 16 S.Ct. 434, 480, 40 L.Ed. 606."

■ An analysis of the indictment as a whole convinces the court that it meets the demands of pleading. The essential elements of the offense as defined by Section 1 of the Sherman Act, 15 U.S.C.A. § 1, are charged in the language of the Act. The means and manner by which the conspiracy was formed and carried out are set forth in detail. Clearly it is sufficiently definite and certain to apprise all the defendants of the charge against them and to shield them against another prosecution for the same agreements and acts. Each and every defendant is advised that he engaged in a price fixing agreement for the sale of raw and canned tomatoes in interstate trade and commerce and is fully advised of the manner of his participation in the agreement. In United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 223, 60 S.Ct. 811, 844, 84 L.Ed. 1129, it is said:

"As we have indicated, the machinery employed by a combination for price-fixing is immaterial.

"Under the Sherman Act a combination formed for the purpose and with the effect

of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate or foreign commerce is illegal per se. Where the machinery for price-fixing is an agreement on the prices to be charged or paid for the commodity in the interstate or foreign channels of trade, the power to fix prices exists if the combination has control of a substantial part of the commerce in that commodity. Where the means for price-fixing are purchases or sales of the commodity in a market operation or, as here, purchases of a part of the supply of the commodity for the purpose of keeping it from having a depressive effect on the markets, such power may be found to exist though the combination does not control a substantial part of the commodity. In such a case that power may be established if as a result of market conditions, the resources available to the combinations, the timing and the strategic placement of orders and the like, effective means are at hand to accomplish the desired objective. But there may be effective influence over the market though the group in question does not control it. Price-fixing agreements may have utility to members of the group though the power possessed or exerted falls far short of domination and control. Monopoly power (United States v. Patten, 226 U.S. 525, 33 S.Ct. 141, 57 L.Ed. 333, 44 L.R.A.,N.S., 325) is not the only power which the Act strikes down, as we have said. Proof that a combination was formed for the purpose of fixing prices and that it caused them to be fixed or contributed to that result is proof of the completion of a price-fixing conspiracy under Sec. 1 of the Act [15 U.S.C.A. § 1]. The indictment in this case charged that this combination had that purpose and effect. And there was abundant evidence to support it. Hence the existence of power on the part of members of the combination to fix prices was but a conclusion from the finding that the buying programs caused or contributed to the rise and stability of prices."

The court in the same case at pages 221, 222, of 310 U.S., at page 843 of 60 S.Ct., 84 L.Ed. 1129, said: "Any combination which tampers with price structures is engaged in an unlawful activity. Even though the members of the price-fixing group were in no position to control the market, to the extent that they raised, lowered, or stabilized prices they would be directly interfering with the free play of market forces. The Act places all such schemes beyond the pale and protects that vital part of our economy against any degree of interference. Congress has not left with us the determination of whether or not particluar price-fixing schemes are wise or unwise, healthy or destructive. It has not permitted the age-old cry of ruinous competition and competitive evils to be a defense to price-fixing conspiracies. It has no more allowed genuine or fancied competitive abuses as a legal justification for such schemes than it has the good intentions of the members of the combination. If such a shift is to be made, it must be done by the Congress. Certainly Congress has not left us with any such choice. Nor has the Act created or authorized the creation of any special exception in favor of the oil industry. Whatever may be its peculiar problems and characteristics, the Sherman Act, so far as price-fixing agreements are concerned, establishes one uniform rule applicable to all industries alike. There was accordingly no error in the refusal to charge that in order to convict the jury must find that the resultant prices were raised and maintained at 'high, arbitrary and non-competitive levels'. The charge in the indictment to that effect was surplusage."

(4) The fourth contention is that the indictment fails to state facts sufficient to charge a crime against any of the defendants.

This contention has been answered in our discussion of contentions one and two and little more need be said. To do so would unduly extend this opinion and be repetitious. The indictment speaks for itself in plain and unambiguous language and as heretofore pointed out charges the defendants with the commission of a crime under the statute, 15 U.S.C.A. § 1. In support of the argument on this contention able counsel for defendants rely greatly upon the case of United States v. Armour & Co., D.C.W.D.Okl., 48 F.Supp. 801. On page 44 of their brief, they say: "If Judge Vaught's opinion is accepted as sound law, and we think it should be because it is supported by a wealth of sound decisions carefully examined and considered by him, then the indictment in the case at bar, which practically parallels the indictment in the Oklahoma case, is vulnerable to the demurrer launched against it by the defendants."

As heretofore shown, the Circuit Court of Appeals for the Tenth Circuit on July

23, 1943, reversed the decision of the District Court and remanded the case with directions to reinstate the indictment and proceed to a trial of the issues. The Circuit Court of Appeals in its opinion said: "In determining the sufficiency of the indictment, we look to its four corners and not to paragraph 17 alone, as appellees would have us do. United States v. King, D.C., 229 F. 275; United States v. American Medical Ass'n, 72 App.D.C. 12, 110 F.2d 703; Ex parte Pierce, C.C., 155 F. 663. Paragraphs 18 and 19 are as much a part of the indictment as paragraph 17, and if the three read together state an offense with such particularity as is required by law, then the indictment is good. 'The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.' United States v. Patten, 226 U.S. 525, 544, 33 S.Ct. 141, 145, 57 L.Ed. 333, 44 L.R.A.,N.S., 325.

 The main attack levied at the indictment is that, (1) it is too vague, indefinite and uncertain, and (2) that no facts are alleged from which it can be determined that there was an unlawful agreement. In short, appellees contend that it is not sufficient to allege that certain parties conspired to restrain trade by fixing prices. Their position seems to be that an indictment must allege that the parties "agreed" to restrain trade by the means alleged, and that an indictment that does not contain the word "agree" or "agreement" is fatally defective.

We attach no such magic to the word "agreed" or "agreement." Of course, a conspiracy is the result, of an unlawful agreement and without an agreement to restrain trade there can be no conspiracy, and an indictment which fails to charge such an agreement is fatally defective. But the words "agreed" or "agreement" are not without synonyms, and any words which fairly import a concerted action or a conniving together to restrain trade are sufficient to charge a conspiracy.

In Wright v. United States, 5 Cir., 108 F. 805, 810, it was said that:

"To charge that the three defendants (naming them) 'did conspire' means that they agreed together or among themselves. While other verbs may be used, the verb 'conspire' is certainly the most appropriate to charge a conspiracy. * * *

"The omission of words that would add nothing to the meaning of an indictment seems so clearly a defect of form only that the application of this statute is apparent."

In United States v. White, C.C., 171 F. 775, 776, the court said: "To allege that the defendants conspired is, at least, to allege that they agreed to do the matters which are set forth as the substance of their conspiracy. I do not mean to say that the mere fact that a conspiracy is alleged is sufficient to show that the conspiracy was unlawful, but that, taken at its lowest terms, to allege a conspiracy is to allege an agreement."

In United States v. Wupperman, D.C., 215 F. 135, 136, the court said: "The crime of 'conspiracy' is sufficiently charged if it be stated that two or more persons, naming them, conspired (that is, agreed together) to commit some offense against the United States * * *."

The indictment considered by the court in United States v. Patten, 226 U.S. 525, 535, 33 S.Ct. 141, 142, 57 L.Ed. 333, 44 L.R.A.,N.S., 325, charged the defendants "with engaging in a conspiracy in 'restraint of, and to restrain * * * trade and commerce among the several states' * * *." These words were held to charge a conspiracy.

In the recent case of United States v. St. Joseph Stockyards Co., D.C., 44 F.Supp. 31, Judge Otis held that an indictment which charged a "conspiracy to fix prices for sale on Livestock market of hogs in restraint of interstate commerce under agreement that a defendant would purchase hogs each Saturday at prices paid on preceding Friday was not demurrable as failing to charge a crime under Sherman Anti-Trust Act."

 If to conspire is to agree, and to allege that parties conspired is to allege that they agreed, then to allege that they entered into a conspiracy is to allege that they entered into an agreement.

It is apparent that the indictment herein sufficiently charges the commission of a crime by all the defendants and the demurrer is overruled. Exceptions of defendants will be noted of record.